## UNITED STATES v. BECKER.
### No. 260.

Circuit Court of Appeals, Second Circuit.
Feb. 6, 1933.

David P. Siegel, of New York City (Milton B. Seasonwein, of New York City, on the brief), for appellant.

George Z. Medalie, U. S. Atty., of New York City (James A. Austin, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

Becker and two others were indicted for sending obscene matter in interstate commerce, and receiving it upon its return; a conspiracy count was added. An outline of the evidence is as follows: Becker went separately to two salesmen of toys and "novelties," Green and Davis, and asked them to sell obscene stories and pictures, which he should furnish them. They did so, were detected and indicted, and pleaded guilty; sentence upon them was deferred in the hope that Becker and his accomplices, if any, might be decoyed into an interstate shipment of the same things. Post-office inspectors drew up a letter for Davis to give to Becker; in form, an order for a package of obscene matter, to be sent to Kansas City. This letter purported to come from one, Ficken, in fact a post-office inspector, who was the supposititious customer. Davis spoke to Becker on the telephone; he came to Davis's office, where Davis gave him the order, telling him that it was from an old customer. Another defendant, Soloway, whose existence is somewhat dubious, sent such a package by express to Ficken at Kansas City; it arrived, was not claimed, and was returned to New York. A woman, the third defendant, got it from the express company, and was arrested with it in her possession. She said that she was working for Soloway, who could not be apprehended; in her pocketbook was a small photograph of Becker. Becker took the stand and denied all complicity with the transaction, or that he had ever asked Green and Davis to sell obscene matter for him. The jury found him and the woman guilty of sending the package in interstate commerce, of receiving it, and of a conspiracy.

The most important question which the appeal raises is as to Becker's "entrapment." The situation is precisely like that in Grimm

v. U. S., 156 U. S. 604, 15 S. Ct. 470, 39 L. Ed. 550, on which we should have been content without more to rely, were it not for the recent decision in Sorrell v. U. S., 287 U. S. ——, 53 S. Ct. 210, 77 L. Ed. ——. The doctrine of the minority would be a defence here, and require the quashal of this indictment, for concededly the inspectors had directly instigated the commission of the crime laid. We understand it to be the minority view that when this is true it makes no difference that the accused is in course of committing crimes of the same kind, has already formed the design to engage in them, or is suspected with good reason of either. But the decision of the court was otherwise. The majority thought that although the officials may design and provoke the particular crime laid, this is not inevitably a defence. Their decision was that on the evidence before them the jury might have found that the accused was not habitually engaged in such crimes, and had shown no previous disposition to commit them. The precise limits were however left open as to what would excuse such instigation. The only excuses that courts have suggested so far as we can find, are these: an existing course of similar criminal conduct; the accused's already formed design to commit the crime or similar crimes; his willingness to do so, as evinced by ready complaisance. The decisions are plentiful, but the judges generally content themselves with deciding the case upon the evidence before them; we have been unable to extract from them any definite doctrine, and it seems unprofitable once more merely to catalogue the citations. However, it has been uniformly held that when the accused is continuously engaged in the proscribed conduct, it is permissible to provoke him to a particular violation which will be no more than an instance in a uniform series. Lucadamo v. U. S., 280 F. 653 (C. C. A. 2); Nutter v. U. S., 289 F. 484 (C. C. A. 4); Simmons v. U. S., 300 F. 321 (C. C. A. 6); Weiderman v. U. S., 10 F.(2d) 745 (C. C. A. 8). This, as already appears, was certainly implied in Sorrells v. U. S.; it gives the least scope to the doctrine. If it should eventually become settled in that form, an accused who raised the issue, would indeed open himself to an inquiry into his past conduct, but that might be more tolerable than to try out the basis of the officials' suspicions, or the accused's "predisposition" to the crime laid. At any rate, it is as far as we need go here, except for a refinement which we shall notice later.

If Green and Davis were to be believed,

Becker was regularly distributing obscene stories and pictures. The judge told the jury that they should acquit the defendants, if they "had never dealt in such character of literature," or had done what they "never theretofore had done." Indeed, strictly construed, his charge went further and laid down the doctrine stated by the minority in Sorrells v. U. S. But we give the appellant the benefit of the ambiguity, especially since otherwise the judge must have dismissed the indictment and since he refused an express request in those terms. We must take it therefore that the jury found that it was Becker's practice to deal in such things, and if so, the situation falls within Grimm v. U. S., supra, 156 U. S. 604, 15 S. Ct. 470, 39 L. Ed. 550, a decision which we understand still to stand. However, though they so found, it was not shown that he had ever before sent any obscene matter across a state line, and that was the crime with which he was charged. The crimes in which he had been engaged were offenses against another sovereign, though the distinction was not suggested at the trial. If the excuses for instigation include the accused's "predisposition" to the crime charged, the point is a bad one anyway. One who distributes obscene pamphlets locally is not morally averse to sending them to another state. But we do not wish to commit ourselves to the doctrine that mere readiness is enough, in spite of some of our language in U. S. v. Reisenweber (C. C. A.) 288 F. 520. Even though only those may be induced to commit crime who are already so engaged, it would be a narrow limitation to require that the crime charged should formally be the same. A habitual burglar may steal; a counterfeiter, pass his money; a forger, embezzle. The whole doctrine derives from a spontaneous moral revulsion against using the powers of government to beguile innocent, though ductile, persons into lapses which they might otherwise resist. Such an emotion is out of place, if they are already embarked in conduct morally indistinguishable, and of the same kind. We are indeed acutely aware of the nebulous outlines that emerge, but we see no escape from defining them as occasion arises, unless instigation alone is to be a defence. We conclude that Becker was not "entrapped" into the crime.

■■ Though asked to do so, the judge failed to caution the jury that they should scrutinize the testimony of Green and Davis narrowly, because they were accomplices. They were not; a decoy is not regarded as an accomplice, not having the same motive to fabricate his story. Shepard v. U. S., 160 F. 584 (C. C. A. 8); Lett v. U. S., 15 F.(2d) 690 (C. C. A. 8); Smith v. U. S., 17 F.(2d) 723 (C. C. A. 8); Wigmore, § 2060. But Davis and Green were not ordinary decoys; they had reason to expect that their sentence might depend upon their testimony, and there was precisely as much ground to suspect their veracity as though they had been formally accomplices. We dispose of the point as though they had been. The warning is never an absolute necessity. It is usually desirable to give it; in close cases it may turn the scale; but it is at most merely a part of the general conduct of the trial, over which the judge's powers are discretionary, like his control over cross-examination, or his comments on the evidence. If he thinks it unnecessary—at least when, as here, the guilt is plain—he may properly refuse to give it. Such we understand to be the upshot of the decisions. Caminetti v. U. S., 242 U. S. 470, 495, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168; Holmgren v. U. S., 217 U. S. 509, 523, 524, 30 S. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778; Rachmil v. U. S., 288 F. 782, 785 (C. C. A. 2); Wallace v. U. S., 243 F. 300, 301, 307 (C. C. A. 7); Kearns v. U. S., 27 F. (2d) 854, 856 (C. C. A. 9). Freed v. U. S., 49 App. D. C. 392, 266 F. 1012, is the only case we have found to the contrary. In McGinnis v. U. S., 256 F. 621, we implied that the caution need not be given, but thought the evidence insufficient for a conviction.

■■ Becker's photograph, found in the woman's purse, was admitted against him over his protest. She was engaged in a transaction which began by the order, given him by Davis. Of this Soloway, if he existed at all, could not have learned, nor could he have acted upon it, except he got it from Becker. She was thus shown to have been in concert with Becker's accomplice, for she admitted being in Soloway's employ. The photograph was competent corroboration; it was not an unsworn declaration and so hearsay; it was an object from whose appearance and provenance the jury might make any reasonable inferences. It was taken from a pose, and while the photographer might of course have given a copy to the woman without Becker's knowledge, that was less probable than that either he should have done so himself, or some one else, with his consent. Evidence to be competent need not be conclusive; it is only necessary that the use made of it must not in-

volve too speculative inferences, a question which the judge must decide. It does not seem to us that in this case he erred.

■■ Over Becker's objections, there were admitted some waybills and other records of the express company, coming from its custody, and made as incidents in the routine of its regular business. Becker might indeed have demanded further disclosure of the system under which they were made, but his objection was that the documents must be proved by the testimony of the entrants, and that if these had the facts at second hand, then by witnesses to the transactions themselves. This will no longer serve, when the documents are parts of records necessary to the conduct of a large business, involving multifarious transactions, and are prepared by numbers of employees whose co-operation is necessary to its successful management. The objection to be good must be directed to the methods adopted to insure accuracy; if challenged, the party offering the documents must prove that the system is such as prima facie to be reliable. Massachusetts Bonding Co. v. Norwich Pharmacal Co., 18 F.(2d) 934 (C. C. A. 2); U. S. v. Cotter, 60 F.(2d) 689 (C. C. A. 2). Cf. The Spica, 289 F. 436, 445 (C. C. A. 2); Straus v. Victor Talking Machine Co. (C. C. A.) 297 F. 791, 804.

■ The judge failed to charge the jury as to circumstantial evidence, contenting himself with an entirely neutral statement of the opposed contentions of the parties, though he had been asked to say that such evidence was enough only when it foreclosed the hypothesis of innocence. He had with ample elaboration told them that they must be satisfied beyond fair doubt of the defendant's guilt, and that in our judgment was enough, though some courts have held otherwise. Stutz v. U. S., 47 F.(2d) 1029 (C. C. A. 5); Garst v. U. S., 180 F. 339 (C. C. A. 4); Anderson v. U. S., 30 F.(2d) 485, 487 (C. C. A. 5). The requirement seems to us a refinement which only serves to confuse laymen into supposing that they should use circumstantial evidence otherwise than testimonial. All conclusions have implicit major premises drawn from common knowledge; the truth of testimony depends as much upon these, as do inferences from events. A jury tests a witness's credibility by using their experience in the past as to similar utterances of persons in a like position. That is precisely the same mental process as when they infer from an object what has been its past history, or from an event what must have preceded it. All that can be asked is that the importance of the

result to the accused shall demand a corresponding certainty of his guilt; and this is commonly and adequately covered by telling them that the conclusion shall be free from fair doubt. To elaborate this into an inexorable ritual, or to articulate it for different situations, is more likely to impede, than to promote, their inquiry.

The other points raised are of minor consequence and do not require discussion.

Judgment affirmed.