**CAPOZZI v. UNITED STATES, and seven other cases.**

**Nos. 6138, 6140–6146.**

Circuit Court of Appeals, Third Circuit.

June 8, 1937.

Nicholas M. Curcio, of Wilkes-Barre, Pa., for appellant Capozzi.

Abram Salsburg, of Wilkes-Barre, Pa., and Andrew B. Dunsmore, of Wellsboro, Pa., for other appellants.

Frederick V. Follmer, U. S. Atty., and Arthur A. Maguire, Asst. U. S. Atty., both of Scranton, Pa.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

922

THOMPSON, Circuit Judge.

These are appeals from judgments of the District Court for the Middle District of Pennsylvania. The appellants were charged with conspiracy to violate the internal revenue laws (18 U.S.C.A. § 88), to wit: To operate a still without registering (26 U.S.C.A. § 281, now section 1162); to carry on the business of distillers without giving bond (26 U.S.C.A. § 306, now section 1184); to make or ferment mash, wort, or wash in a building other than a distillery authorized by law (26 U.S.C.A. § 307, now section 1185); and to distill on prohibited premises (26 U.S.C.A. § 291, now section 1170). The evidence presented by the government tended to show the following facts:

On November 14, 1934, at about 10:15 p. m., government and state officers raided premises known as the Gheen farm, which was located in an isolated section of Lycoming county, Pa. Title to the Gheen farm, originally in the name of Royal G. Shaffer, was later transferred to Kyle L. Coltrane, a brother-in-law of Prince D. Farrington. There was evidence, however, that the farm was owned by Farrington, who lived a short distance away.

A large, unregistered alcohol still was found in the barn, and a steam boiler, used in the operation of the still, was found in the basement of the house.

An inventory, made at the time of the raid, included the following items:

On the first floor of the house were found: 175 5-gallon cans, full of alcohol; 53 5-gallon cans, empty; 200 10-gallon kegs, empty; 1 empty copper vat, 3'x8'; 3 empty 50-gallon wooden kegs; 25 pounds charcoal; 12 1-gallon glass jugs, empty; 1 filter and filtering tank; 5 single and double barrel shotguns; and a quantity of miscellaneous items of a nature and kind used in and about a still.

On the second floor of the house were found: 19 cartons of glass jugs of colored whisky, 6 gallons to the carton, amounting to 114 gallons; 55½ cartons of glass jugs of colored whisky, 4 gallons to the carton, amounting to 222 gallons; 1 10-gallon barrel of colored whisky; 1 10-gallon barrel, two-thirds full of colored whisky; 10 empty 10-gallon barrels; and 7 pieces of firearms, consisting of revolvers and rifles.

In the attic or third floor of the house were found: 150 pounds charcoal; 12 1-gallon jugs, empty; 80 10-gallon kegs, empty; 122 10-gallon kegs full of colored whisky, amounting to 1,220 gallons; 1 50-gallon keg, empty; rubber hose; and wooden keg bungs.

In the basement of the house were found: 2 10-gallon kegs, empty; 1 10-H. P. upright boiler (steam); 1 oil feed stationary boiler, 60 H. P., 6'x15'; 1 gasoline engine, 3 H. P.; 1 oil storage tank, capacity 120 gallons, used to feed 60-H. P. boiler; 1 electric motor, 1-H. P.; 1 galvanized tank, 14'x5'; 1 air compressor with 36" flywheel and belt; 1 electric motor, ½-H. P., with oil pump; 1 steel tank, empty, 4'x4'; and 1 Sepco automatic electric water heater, capacity 50 gallons.

On the main floor of the barn: 75 50-gallon steel drums of molasses; 800 empty 5-gallon cans; 285 100-pound bags No. 13 soft brown sugar; 4 wooden vats 16'x10', full of fermenting mash and each containing approximately 15,040 gallons; copper columns; together with dephlegmater, and a lot of iron pipe.

In the basement of the barn were found: 1 steel cooker, 12'x8'; 2 steam pumps; 1 steel storage tank, 7'x8'; 1 Worthington pump; and 2 small steam pumps.

A Reo truck, registered in the name of one T. B. Frank but shown in fact to be owned by Prince D. Farrington, was found on the premises. This truck had been used in the transportation of great quantities of sugar purchased on the account of Prince D. Farrington. It had also been used in the transportation of a boiler which answered the description of the one found in the basement of the house. A Reo tractor and trailer registered in the name of Prince D. Farrington hauled large quantities of molasses from Philadelphia. From July 12, 1934, to August 31, 1934, 115,000 pounds of sugar were purchased from the Pennsylvania Sugar Company in the name of Prince D. Farrington, and within a period of six weeks 8,000 gallons of molasses from the National Molasses Company. Some of the sugar was delivered by a public trucker who billed Prince D. Farrington for the same. Sugar seized on the Gheen farm was packed in bags of the Pennsylvania Sugar Company. Molasses was purchased upon orders from Joe Capozzi. Materials of the character seized during the raid were purchased on Farrington's account and delivered either to him, Floyd Shaffer, Royal G. Shaffer, or Hugh C. Murrow.

Floyd A. Shaffer admitted working for Farrington. At one time he was accosted driving the Reo truck loaded with 100 bags of corn sugar. On several occasions he purchased materials on Farrington's account of the same description as the materials found in and about the still.

Damiano Fraziatta and Vincenzo Coppola were arrested in the barn, the former while working about a block and tackle on the top floor of the barn, and the latter while working on the scaffolding. Fraziatta, when told he was under arrest, said, "Why don't you see the boss?" referring to Prince D. Farrington.

Hugh C. Murrow entered the farmhouse after the raid with a test tube in his hand and stains such as those made by molasses on his hat. He had been seen on the premises on previous occasions. The house was tenanted by men only, Coltrane doing the cooking. Coltrane stated he was the owner of the farm and was about the premises prior to the raid as well as the night of the raid.

■ We have read through the record in detail and are of the opinion that the above is a fair, though condensed, summary of the evidence. In view of this evidence, it was the duty of the jury to determine whether the appellants did in fact conspire to violate the revenue laws. As was said by Judge Davis speaking for this court in Pomerantz v. United States, 51 F.(2d) 911, 912: "It is true that the evidence here is largely circumstantial, but the very nature of the offense of conspiracy usually requires that it be proved by such evidence. There is no inherent defect in circumstantial evidence which prevents it from producing persuasion."

■ It is contended that the court erred in the admission of certain records. Those records consisted of accounts in the name of Prince D. Farrington. The records were originals, were made in the ordinary course of business, were authenticated by the persons who in fact made them, or by those under whose supervision and control they were made. Under those circumstances, they were properly admitted in evidence. In United States v. Becker (C.C.A.) 62 F.(2d) 1007, 1010 the court said: "Over Becker's objections, there were admitted some waybills and other records of the express company, coming from its custody, and made as incidents in the routine of its regular business. Becker might indeed have demanded further disclosure of the system under which they were made, but his objection was that the documents must be proved by the testimony of the entrants, and that if these had the facts at second hand, then by witnesses to the transactions themselves. This will no longer serve, when the documents are parts of records necessary to the conduct of a large business, involving multifarious transactions, and are prepared by numbers of employees whose co-operation is necessary to its successful management. The objection to be good must be directed to the methods, adopted to insure accuracy; if challenged, the party offering the documents must prove that the system is such as prima facie to be reliable. Massachusetts Bonding Co. v. Norwich Pharmacal Co., 18 F.(2d) 934 (C.C.A.2); U. S. v. Cotter, 60 F.(2d) 689 (C.C.A.2). Cf. The Spica, 289 F. 436, 445 (C.C.A.2); Straus v. Victor Talking Machine Co. (C.C.A.) 297 F. 791, 804."

■ The prosecuting attorney, in his closing address to the jury, referring to Prince D. Farrington said: "He is not prince of bootleggers, he is the king of bootleggers." The court immediately instructed the jury to disregard this remark. Without doubt the prosecuting attorney was carried away by an excess of oratorical zeal. The remark was not, however, of such character as to require a reversal. See Diggs v. United States (C.C.A.) 220 F. 545, 555.

We find no substantial error in the charge, in the rulings on the points for charge, nor in the conduct of the trial.

Judgments affirmed.