Gayle **GROSSMAN**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. 1015.

Supreme Court of Alaska.

July 21, 1969.

Peter LaBate, Anchorage, for appellant.

Douglas B. Baily, Dist. Atty., Russell J. Gallagher, Asst. Dist. Atty., Anchorage, G. Kent Edwards, Atty. Gen., Juneau, for appellee.

Before NESBETT, C. J., and DIMOND, RABINOWITZ, BONEY, and CONNOR, JJ.

## OPINION

CONNOR, Justice.

This appeal raises the question of whether the evidence before the court below required a finding of entrapment as a matter of law.

Appellant was indicted for selling morphine to an undercover agent of the Alaska State Police.[1] She pleaded not guilty, was tried by a jury, and was convicted and sentenced upon a verdict of guilty. At the close of the prosecution's case, her counsel moved for a judgment of acquittal[2] on the ground that the evidence required a finding of entrapment as a matter of law. The motion was denied and the issue

1. AS 17.10.010.

2. Crim.R. 29(a).

of entrapment was submitted to the jury, which found against appellant. Appellant does not question the adequacy of the instructions, nor has she raised any question about the burden of proof concerning entrapment. These and certain other questions concerning the defense of entrapment are not, therefore, before us.

Although some authorities regard the defense of entrapment as a relatively simple concept,[3] many outstanding jurists have had difficulty in stating a workable or rational set of rules for its application. The doctrine of entrapment has occupied an identifiable position in our law for over 50 years,[4] having evolved from earlier decisions covering unconscionable deceit or activity by the police.[5]

It is plain enough that the underlying basis of entrapment is found in public policy, as discerned and announced by the courts. As Judge Learned Hand perceptively observed in United States v. Becker, 62 F.2d 1007, 1009 (2d Cir. 1933),

> "The whole doctrine derives from a spontaneous moral revulsion against using the powers of government to beguile innocent, though ductile, persons into lapses which they might otherwise resist."

A similar notion was expressed in Butts v. United States, 273 F. 35, 38 (8th Cir. 1921), where the court said,

> "[I]t is unconscionable, contrary to public policy, and to the established law of the land to punish a man for the commission of an offense of the like of which he had never been guilty, either in thought or in deed, and evidently never would have been guilty of if the officers of the law had not inspired, incited, persuaded and lured him to attempt to commit it."

It is in the attempt to state more precise standards that trouble has been encountered. In Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), the majority opinion viewed entrapment as an implied statutory condition that one who has been entrapped shall not be convicted of violating the statute. It held that the defense of entrapment should be treated as a matter of law when the facts are substantially undisputed, but as a question of fact for the jury when the evidence is more conflicting. The court stated that the officers of government may afford opportunities to commit crime, may employ artifice and stratagems to catch persons engaged in criminal enterprise, but they cannot implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute.[6]

The court emphasized that entrapment applies only when the criminal conduct is "the product of the creative activity" of the government agents.[7] It held that the determination in each case should focus on whether the particular defendant was predisposed to commit the crime or was an otherwise innocent person who would not have erred except for the persuasion of the government's agents. This permits a searching inquiry into the conduct and motivations of both the officers and the defendant, including the past conduct of the defendant in committing similar crimes, and the general activities and character of the defendant.

In a separate opinion by Mr. Justice Roberts, who was joined by Brandeis and Stone, JJ., it was urged that entrapment in all cases should be determined by the

---

3. Perkins, Criminal Law 921 (1957).

4. Woo Wai v. United States, 223 F. 412 (6th Cir. 1916).

5. Examples from the earlier cases are United States v. Healy, 202 F. 349 (D. Mont.1913), in which the defendant was charged with selling liquor to an Indian who was disguised to mislead the accused as to his race; State v. Adams, 115 N.C. 775, 20 S.E. 722 (N.C.1894), where con-

sent was held to have precluded conviction for larceny; and United States v. Whittier, 28 F.Cas. 591 (No. 16,688), (C.C.E.D.Mo.1878), where the government connived with the victim to lure the defendant into a violation of the postal laws.

6. 287 U.S. 435, 442, 53 S.Ct. 210.

7. 287 U.S. 435, 451, 53 S.Ct. 210, 216.

trial court as a matter of law. He did not regard entrapment as a true defense but as an analogue of the principle in civil actions that the courts will refuse their aid in perpetrating or consummating an illegal scheme. He saw entrapment as based on public policy which protects the purity of government and its processes, and not as an implied statutory condition to be attributed to congressional intent.

Because the effect of the *Sorrells* decision was to focus inquiry upon the particular mental and character traits of the defendant, it has been labeled by some as a "subjective" test.

The outlines of the *Sorrells* approach were stated by Judge Learned Hand in United States v. Becker, 62 F.2d 1007 (2d Cir. 1933). There is little that could be added to his summary to express the state of the law under *Sorrells* today. In his analysis the inquiry turns on whether the government instigation of a crime is excusable. He observed,

"The only excuses that courts have suggested so far as we can find, are these: an existing course of similar criminal conduct; the accused's already formed design to commit the crime or similar crimes; his willingness to do so, as evinced by ready complaisance. The decisions are plentiful, but the judges generally content themselves with deciding the case upon the evidence before them; we have been unable to extract from them any definite doctrine, and it seems unprofitable once more to merely catalogue the citations. However, it has been uniformly held that when the accused is continuously engaged in the proscribed conduct, it is permissible to provoke him to a particular violation which will be no more than an instance in a uniform series." 62 F.2d, at 1008.

The majority opinion in *Sorrells* was reaffirmed in Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). But four members of the court, speaking through Mr. Justice Frankfurter,

took issue with the majority and with the majority in the *Sorrells* case. They proposed an objective test of whether the police activity falls below standards of fair and honorable administration of justice. The standards of honorable administration of justice would depend upon the effect of the officer's inducements upon an average person, and not upon the particular defendant in each case. The determination would not be made by the jury. The standards themselves would be evolved gradually in accumulative precedents. The effect would be to check police activity in a manner similar to the exclusionary rules that apply to search and seizure, custodial interrogation, and confessions.

The minority opinion in *Sherman* dealt with both the policy behind the law of entrapment and the way in which that policy can best be effectuated:

"The courts refuse to convict an entrapped defendant, not because his conduct falls outside the proscription of the statute, but because, even if his guilt be admitted, the methods employed on behalf of the Government to bring about conviction cannot be countenanced. * * Insofar as they are used as instrumentalities in the administration of criminal justice, the federal courts have an obligation to set their face against enforcement of the law by lawless means or means that violate rationally vindicated standards of justice, and to refuse to sustain such methods by effectuating them. They do this in the exercise of a recognized jurisdiction to formulate and apply 'proper standards for the enforcement of the federal criminal law in the federal courts,' McNabb v. United States, 318 U.S. 332, 341, 87 L.Ed. 819, 824, 63 S.Ct. 608, 613 * * *." 356 U.S., at 380, 78 S.Ct., at 824.

The minority then stated that the better way to further this policy is to focus the determination upon the character of the police conduct rather than upon the defendant's predisposition. To rest the determin-

ation on the origin of intent is irrelevant because,

> "[I]n every case of this kind the intention that the particular crime be committed originates with the police, and without their inducement the crime would not have occurred." 356 U.S., at 382, 78 S.Ct., at 825.

The result of that logic is that the inquiry becomes limited to one of predisposition, and the defendant is then put on trial for his past offenses and character. This results in prejudice, especially if the question is presented to a jury. Moreover, the result will differ on whether the defendant has previously committed a crime or has no record.

> "Appeals to sympathy, friendship, the possibility of exorbitant gain, and so forth, can no more be tolerated when directed against a past offender than against an ordinary law-abiding citizen. * * * Past crimes do not forever outlaw the criminal and open him to police practices, aimed at securing his repeated conviction, from which the ordinary citizen is protected. The whole ameliorative hopes of modern penology and prison administration strongly counsel against such a view." 356 U.S., at 383, 78 S.Ct., at 826.

The scholarly examinations of the defense of entrapment have also revealed the inadequacies of the subjective test.[8] To speak of entrapment as an implied statutory condition, and then to focus inquiry on the origin of intent, the implantation of criminal design, and the predisposition of the defendant does not make much sense. If entrapment is a substantive condition of guilt, then it ought to apply when private persons induce the commission of an offense. But no court has ever been willing to make such an application of the *Sorrells* doctrine. An external standard, if it can be achieved, is certainly preferable to a doctrine founded in theoretical riddles.

While this court in Goresen v. State, 432 P.2d 326 (Alaska 1967), applied the *Sorrells* majority test, it did not consider what are the rules of entrapment.

We feel that the proper solution is the objective test which focuses the determination upon the particular conduct of the police in the case presented. Inducements should be limited to those measures which, objectively considered, are likely to provoke to the commission of crime only those persons, and not others, who are ready and willing to commit a criminal offense.

The objective test can be stated as follows: unlawful entrapment occurs when a public law enforcement official, or a person working in cooperation with him, in order to obtain evidence of the commission of an offense, induces another person to commit such an offense by persuasion or inducement which would be effective to persuade an average person, other than one who is ready and willing, to commit such an offense. Conversely, instigations which would induce only a person engaged in an habitual course of unlawful conduct for gain or profit do not constitute entrapment.[9]

---

8. Cowen, The Entrapment Doctrine in the Federal Courts, and Some State Court Comparisons, 49 Northwestern L.Rev. 447 (1959); Donnelly, Judicial Control of Informants, Spies, Stool Pigeons, and Agent Provocateurs, 60 Yale L.J. 1091 (1951); Mikkell, The Doctrine of Entrapment in the Federal Courts, 90 U. Pa.L.Rev. 245 (1942); Senneff, Entrapment in the Federal Courts, 1 U.S.F.L. Rev. 177 (1966); Williams, The Defense of Entrapment and Related Problems in Criminal Prosecution, 28 Fordham L. Rev. 399 (1959); Comment, 33 N.Y.U.L. Rev. 1033 (1958). The American Law Institute in its proposed Model Penal Code has recommended that an objective test should be employed. Model Penal Code § 2.13 (Proposed Official Draft, 1962).

9. DeFeo, Entrapment As A Defense To Criminal Responsibility: Its History, Theory and Application, 1 U.S.F.L.Rev. 243 (1967), at 275, criticizes the objective test because he believes that it permits only police activity which would tempt a chronic violator, but would require that a number of situational of-

Examples of what might constitute prohibited activity, depending upon an evaluation of the facts in each case, are extreme pleas of desperate illness, appeals based primarily on sympathy, pity, or close personal friendship, and offers of inordinate sums of money. While the line between what is permitted and not must be drawn somewhat as a matter of degree, this is no different from many determinations which the courts must make in the cases before them. For example, an officer should be able to offer money in reasonable amounts at a prevailing price level in an unlawful traffic. But offers of profit which are grossly disproportionate to what is reasonably expectable in that traffic should not be permitted when those offers would have the effect of overwhelming the self-control of a normal person.

In applying the objective test we do not mean that the course of conduct between the officer and the defendant should be ignored. The transactions leading up to the offense, the interaction between the officer and the defendant, and the defendant's response to the inducements of the officer are all to be considered in judging what the effect of the officer's conduct would be on a normal person.

In short, we do not intend that entrapment should become a ready escape hatch for those who are engaged in a course of criminal enterprise. But, under standards of civilized justice, there must be some control on the kind of police conduct which can be permitted in the manufacture of crime.

While we do not need to consider in this case all of the procedural changes which flow from our decision, it is obvious that the issue of entrapment can be litigated either before or during trial and should be determined by the court and not the jury.

We now turn to the case before us.

At her trial appellant presented no evidence on her own behalf. The state's evidence consisted largely of the testimony of Joseph P. Turner about the events leading up to the sale of morphine and the circumstances of the sale itself. His testimony was along the following lines:

Officer Turner was assigned to the Anchorage area during November of 1967 to investigate and report on criminal activities in Anchorage. On December 2, 1967, at about 5:30 a. m., he went to the Woods' Barbecue, an establishment run by the appellant. On that occasion he had a conversation with her during which she said that she was using pills to stay awake and that if he needed any she could get him some. He declined this offer but said that he could use some "pot." They discussed the price and he ordered a matchbox of it. He returned at about 10:30 a. m. that day, at which time she said she would get the marijuana. Subsequently she did get the marijuana for him.

Officer Turner throughout his dealings with the appellant made it his policy to gain her confidence and attempt to befriend her. He saw her almost daily from the date of their first meeting until December 18, 1967, the date of the offense charged. On one occasion, the night of December 4, he took appellant to various bars in the Anchorage area. At another time he helped her with her grocery shopping. His policy of friendship toward appellant was so successful that she asked Turner to help her run the bar on December 8. The officer testified to other dealings with the appellant leading up to the sale of morphine. On December 3, while at the Woods' Barbecue, he asked the appellant about the possibilities of getting "dexies" (amphetamines). She said that she would take care of it for him, and he ordered about a dozen. On December 8 he delivered some pills for her and collected payment from the recipient for her. In the early morning of December 12 she told him that when the "squares" left the premises of the Woods' Barbecue there would be a party. Ap-

fenders be set free who commit consensual offenses. We do not intend such

a result, nor do we state the test of entrapment in those terms.

parently he did not stay for the party. On December 16 appellant asked Turner to watch the bar for her while she took someone home. She said that if anyone came by for pills while she was gone to tell them she would have some on Monday.

On December 13 officer Turner again went to the bar, and on this occasion he asked appellant about the possibility of getting some "hard stuff" for a friend in Fairbanks who needed a new contact. By "hard stuff" the officer said that he meant heroin or morphine. Officer Turner stated that between the time of this initial request and the sale, he repeated his request a number of times. He specifically mentioned a telephone call he made to the appellant on December 15 when he asked if she had received the morphine yet. On December 18 she told the officer that she had received the shipment. She then took him to her trailer and sold him part of the shipment amounting to ten "fixes." She told him also that she had given some of the shipment to a friend to dispose of on her behalf. It was for the sale to officer Turner that appellant was arrested and prosecuted.

Although, in the present case, Turner dated the defendant on one occasion, there is no evidence of a romantic relationship between them. Nor does it appear that the brief friendship between them was close. After appellant evinced an interest in supplying marijuana and dexedrine pills to Turner, he was justified in continuing his contacts with her and in asking to purchase morphine.

Under the objective test we have announced today, the issue of entrapment is to be ruled on by the trial court. Therefore, it was error for the court below to submit the question to the jury. Although on the face of the record appellant's claim seems rather weak, we feel that the trial judge who heard and saw the witness would be better able to weigh the evidence. Accordingly, the case is remanded to the su-

perior court for determination of the issue of entrapment by the trial judge.[10] If the trial judge should conclude, as the jury was allowed to conclude, that the claim of entrapment was not sustained, the conviction shall stand. If the trial judge reaches a different result, the indictment should be dismissed.

Reversed and remanded.

NESBETT, Chief Justice.

I concur with the result.

---

10. This was the procedure suggested by Frankfurter, J., in Masciale v. United States, 356 U.S. 386, 389, 78 S.Ct. 827, 2 L.Ed.2d 859 (1958).