Larry WASHINGTON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–1146.

Court of Appeals of Alaska.

April 29, 1988.

Douglas S. Miller, Asst. Public Advocate, and Brant McGee, Public Advocate, Anchorage, for appellant.

Nancy R. Simel, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, An-

chorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., SINGLETON, J., and SERDAHELY, Superior Court Judge.[*]

OPINION

BRYNER, Chief Judge.

Following a court trial before Superior Court Judge Karl S. Johnstone, Larry Washington was convicted of two counts of misconduct involving a controlled substance in the second degree (delivery of and possession with intent to deliver heroin), and five counts of misconduct involving a controlled substance in the fourth degree (simple possession of cocaine and heroin and possession of cocaine and heroin with intent to deliver). Prior to trial, Superior Court Judge J. Justin Ripley rejected Washington's motion to dismiss the charges based on entrapment. On appeal, Washington contends that Judge Ripley erred in declining to allow Washington to exercise a peremptory challenge, in rejecting his entrapment defense, and in refusing to grant his motion to suppress evidence seized pursuant to a nighttime search warrant. We affirm.

Washington's charges arose from a series of transactions in which an informant and an undercover officer purchased heroin from two individuals in Anchorage. Washington, who resided in the Seattle area, was alleged to have been the source of the heroin. He was arrested on December 5, 1984, in Anchorage. On December 14, 1984, an indictment was filed against Washington and other individuals involved in the heroin sales.

Washington was initially represented by attorney Paul Nangle. On January 18, 1985, attorney Phillip Weidner filed a notice of substitution of counsel seeking to replace Nangle. On January 21, 1985, three days after Weidner filed the notice of substitution of counsel, Judge Ripley was appointed to hear the omnibus motions in Washington's case. The order of appoint-ment was mailed to Nangle, not to Weidner. Nangle, at that point, no longer considered himself to be taking an active role in the case and did not consider filing a peremptory challenge of Judge Ripley.

The state opposed Weidner's substitution of counsel. Nevertheless, on January 31, 1985, before the substitution of counsel issue was resolved, Weidner filed a motion on behalf of Washington, requesting authorization to unseal affidavits submitted in support of search warrants that were issued in connection with Washington's arrest. On February 4, the superior court entered an order allowing Weidner to assume representation of Washington.

On February 7, 1985, seventeen days after entry of the order appointing Judge Ripley, seven days after he had filed the motion to unseal search warrant affidavits, and three days after being formally substituted for Nangle as Washington's counsel, Weidner filed a number of additional motions on behalf of Washington, including a peremptory challenge to Judge Ripley. Judge Ripley considered the peremptory challenge on February 13, at the outset of the omnibus hearing, and determined that it was untimely. Weidner challenged this finding of untimeliness and urged Judge Ripley to grant the challenge because of the judge's prior experience as a prosecutor and because of animosity that had arisen between Weidner and the judge on past occasions. Weidner emphasized that he would not attempt to challenge Judge Ripley for cause, out of fear of incurring "further animosity." Judge Ripley declined to recuse himself.

On appeal, Washington argues that Judge Ripley erred in failing to honor the peremptory challenge. The state's first line of response is that Washington has forfeited his right to claim error, because he failed to appeal Judge Ripley's denial of the peremptory challenge within the time limits prescribed under Alaska Appellate Rule 216. Appellate Rule 216 provides for an immediate, expedited appeal from the denial of a defendant's motion for peremptory disqualification of a judge and re-

[*] Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

quires the filing of the expedited appeal within ten days after the entry of the order of denial.[1]

According to the state, *Morgán v. State*, 635 P.2d 472, 480–81 (Alaska 1981), articulates the supreme court's desire to require an immediate interlocutory appeal from the denial of a peremptory challenge motion. *Morgan* was a peremptory challenge appeal that arose following the defendant's conviction. At the time, Appellate Rule 216 did not provide for expedited interlocutory appeals of peremptory challenge denials. In deciding *Morgan*, the supreme court concluded that such appeals should be allowed as a matter of right:

> [G]iven the special nature of the disqualification right, designed to insure all litigants a fair trial before an impartial and unbiased judge, and the unnecessary expense of the trial which both the state and the defendant are put through when an erroneous denial of such a motion is made, we think that it is appropriate to allow a defendant to preserve this right by filing an appeal from the denial of the change of judge motion. Such appeal will be processed in accord with the provisions of Appellate Rule 216, which governs expedited appeals. Under such circumstances, we will entertain an appeal on the limited issue of the peremptory disqualification.

635 P.2d at 480 (footnote omitted). Appellate Rule 216 was subsequently amended to implement the court's decision in *Morgan*.

We agree with the state's position that Appellate Rule 216 should be read to set out the exclusive remedy for seeking appellate review after the denial of a peremptory challenge motion. To construe the rule otherwise would frustrate the basic policies addressed by the court in *Morgan* and would accomplish little more than to allow the accused the option of keeping the issue in reserve, in order to secure a new trial in the event of a conviction.

We are nevertheless unpersuaded by the state's argument that Washington should be deemed to have forfeited his claim in this case. Neither *Morgan* nor Appellate Rule 216 unequivocally precludes the raising of a peremptory challenge claim on appeal following a conviction. Before today, both the holding of the court in *Morgan* and the language of Appellate Rule 216 might reasonably have been understood to permit an expedited appeal without requiring one. We have noted this ambiguity on previous occasions without resolving it. *See Hastings v. State*, 736 P.2d 1157, 1161 (Alaska App.1987); *see also Main v. State*, 668 P.2d 868, 873 n. 4 (Alaska App.1983). Although we now hold that the procedure specified in Appellate Rule 216 is mandatory and exclusive, we believe that, in light of the ambiguity that has existed to this date, it would be plainly unfair to apply our interpretation of the rule retrospectively. Accordingly, we deem it necessary to decide Washington's peremptory challenge claim on its merits.[2]

---

1. Alaska Appellate Rule 216 provides, in relevant part:

   Rule 216. Expedited Appeals.
   (a) Scope. This rule applies to the following classes of appeals, and supersedes the other appellate rules to the extent that they may be inconsistent with this rule:
   (1) Extradition appeals;
   (2) Juvenile waiver appeals;
   (3) Peremptory challenge appeals.
   (b) Definitions.
   ....
   (3) A "peremptory challenge appeal" is an appeal by a criminal defendant from an order denying the defendant's motion for change of judge under Criminal Rule 25(d).
   ....
   (d) Notice of Appeal.
   (1) The notice of appeal in an appeal under this rule shall be filed with the clerk of the court which entered the order or judgment being appealed, within 10 days after the date shown in the clerk's certificate of distribution on the order or judgment.

2. We note that Washington's counsel requested a stay of proceedings to allow an interlocutory appeal, but a stay was denied by Judge Ripley. Because, under our holding today, an expedited appeal will be the exclusive remedy for seeking appellate review of an order denying a peremptory challenge motion, we urge trial courts to make appropriate allowances in the scheduling of a case to assure adequate time for the accused to pursue this appellate remedy. In all but extraordinary cases, when there is reason to believe that a peremptory challenge has been asserted in an untimely or otherwise improper manner for the sole purpose of delay, it will be appropriate for trial court judges, upon request,

Under Alaska Criminal Rule 25(d)(2), Washington was entitled to exercise a peremptory challenge within five days after Judge Ripley was assigned to the case.[3] Failure to file within the allotted time period amounted to a waiver of the peremptory challenge right. *See* Alaska R.Crim.P. 25(d)(4). On appeal, Washington does not contend that his attempted peremptory challenge of Judge Ripley was timely. Allowing three days for service by mail of the January 21 order appointing Judge Ripley to the case, Washington had until January 31, 1985, to exercise a timely challenge of Judge Ripley. He did not actually file his challenge until February 7.

Washington nevertheless alleges that Judge Ripley abused his discretion in failing to relax the strict five-day time limitation.[4] Washington cites *Riley v. State*, 608 P.2d 27, 29 (Alaska 1980). There, the supreme court held that it was an abuse of discretion to adhere to the strict five-day limitation, because the defendant was unrepresented when the time limit expired and because the defendant's counsel promptly filed a peremptory challenge motion after being appointed to the case. In these circumstances, the supreme court held: "The right to peremptorily challenge a judge is sufficiently important so that it should not be lost by inaction before there is an opportunity to confer with an attorney." 608 P.2d at 29.

The circumstances here differ significantly from those in *Riley*. Washington was not unrepresented during the period after Judge Ripley was appointed to hear his omnibus motions. Although attorney Weidner had not yet formally been substituted for attorney Nangle, Weidner had already become actively involved in the case by filing a motion to unseal the search warrant affidavits. The notice of Ripley's appointment was sent to Nangle rather than to Weidner, but Weidner never established when he was actually notified of Ripley's appointment. There is nothing in the record demonstrating that Weidner acted promptly to challenge Judge Ripley after first learning of the judge's appointment.

Indeed, in his attempt to challenge Judge Ripley peremptorily, Weidner apparently never specifically claimed that he had been late in receiving notice, and he never expressly asked the court to relax the five-day time limit. Weidner instead merely attempted to persuade Judge Ripley to begin the five-day time limit from the day he was formally substituted as Washington's counsel. Under the totality of the circumstances, we find no abuse of discretion in the denial of Washington's peremptory challenge motion. *McCracken v. State*, 521 P.2d 499, 511 (Alaska 1974); *Trudeau v. State*, 714 P.2d 362, 366 (Alaska App. 1986); *Main v. State*, 668 P.2d 868 (Alaska App.1983).

3. Alaska Criminal Rule 25(d) provides, in relevant part:

Change of Judge as a Matter of Right. In all courts of the state, a judge may be peremptorily challenged as follows:

(1) *Entitlement.* In any criminal case in superior or district court, the prosecution and the defense shall each be entitled as a matter of right to one change of judge. When multiple defendants are unable to agree upon the judge to hear the case, the trial judge may, in the interest of justice, give them more than one change as a matter of right; the prosecutor shall be entitled to the same number of changes as all the defendants combined.

to allow a brief stay pending appeal. We are confident that the expedited procedure set out in Appellate Rule 216 will not occasion undue disruption of trial court calendars. This court will stand ready to resolve peremptory challenge appeals promptly.

(2) *Procedure.* At the time required for filing the omnibus hearing form, or within five days after a judge is assigned the case for the first time, whichever is later, a party may exercise his right to change of judge by filing a "Notice of Change of Judge" signed by counsel, if any, stating the name of the judge to be changed.

. . . .

(4) *Timeliness.* Failure to file a timely request precludes a change of judge under this rule as a matter of right.

4. *See* Alaska Criminal Rule 53, which provides:

Relaxation of Rules.

These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict adherence to them will work injustice.

Washington next argues that Judge Ripley erred in refusing to dismiss the charges against him on grounds of entrapment. Washington's entrapment theory was predicated on the claim that a state informant and undercover officer paid exorbitant prices to Washington's codefendants for the heroin they bought.

■ In rejecting this claim, Judge Ripley found that it was necessary for Washington to testify and he apparently accepted the state's argument that Washington needed to admit all of the elements of the offense before claiming entrapment.

In *Mathews v. United States,* —— U.S. ——, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988), the United States Supreme Court considered an identical issue and concluded that the accused need not testify or admit the commission of an offense before raising an entrapment defense. In the Court's view, a defendant should be permitted to raise inconsistent defenses. We agree. We believe the reasoning in *Mathews* is particularly applicable in Alaska because we follow the objective theory of entrapment. *See Grossman v. State,* 457 P.2d 226 (Alaska 1969). Consequently, there is less inconsistency between defenses denying commission of the offense and raising entrapment than would be the case under the subjective theory followed in the federal cases.

■ The error, however, does not require reversal. Under Alaska law, the defense of entrapment should be determined by the court and not the jury. *Pascu v. State,* 577 P.2d 1064, 1066 n. 2 (Alaska 1978); *Grossman,* 457 P.2d at 230. Where, as here, the proper resolution of an entrapment claim is clear as a matter of law without the need for resolution of disputed facts, the issue is capable of decision by this court in the first instance.

■ Entrapment is an affirmative defense. AS 11.81.450. Washington thus had the burden of establishing the defense by a preponderance of the evidence. AS 11.81.900(b)(1). In order to prevail on this defense, Washington was required to prove that the police employed fundamentally unfair or dishonorable practices calculated to induce someone to commit the crime in question so that he might be arrested and prosecuted for the offense. *Pascu,* 577 P.2d at 1067. And, while he did not need to negate a predisposition to engage in similar conduct, he did need to show that the dishonorable police practices were a substantial factor in inducing him to commit the charged offenses—that his commission of the offenses was "the direct result of inducement by law enforcement officials." AS 11.81.450; *Anchorage v. Flanagan,* 649 P.2d 957, 961–62 (Alaska App.1982).[5]

While Washington's evidence arguably indicated that the police paid higher than average prices for the heroin they bought in Anchorage and that this may have motivated Washington's Anchorage codefendants, there is little if anything to support a finding, by a preponderance of the evidence, that the challenged police conduct actually induced Washington to ship heroin from Seattle to his codefendants in Alaska. Even when viewed in the light most favorable to his case, Washington's proof does not suffice to establish a nexus between any dishonorable police conduct and his own personal involvement in the transactions for which he was convicted. Accordingly, the trial court did not err in its rejection of Washington's entrapment claim.

The final point on appeal raised by Washington pertains to a search warrant for the residence of one of Washington's codefendants. Washington was a guest in the residence when it was searched. Washington asserts that the evidence was insufficient to support issuance of a nighttime warrant. Having reviewed the record, however, we are satisfied that sufficient evidence was

5. Under the pre-existing standard rejected by the court in *Pascu,* 577 P.2d at 1066–67, Washington would have been required to go a step farther by establishing not only that he was actually induced by the challenged police conduct, but also that an average person would have been induced to commit an offense under like circumstances. Under the prevailing federal standard, Washington would have been required to prove both actual inducement and the lack of personal, subjective predisposition. *See Mathews v. United States,* 108 U.S. at 886.

presented to the issuing judge to allow the requisite finding of positivity—in other words, a finding that the evidence sought was reasonably certain to be located on the subject premises. *Johnson v. State,* 617 P.2d 1117, 1123 (Alaska 1980); *State v. Morris,* 668 P.2d 857, 861 (Alaska App. 1983). *See also State v. Gutman,* 670 P.2d 1166, 1173 & n. 5 (Alaska App.1983). We find no error in the denial of Washington's motion to suppress evidence.

The conviction is AFFIRMED.

COATS, J., not participating.