[No. 8728–2–I.   Division One.   January 20, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. PATRICK
M. PUTNAM, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. CALVIN
M. HIATT, *Appellant.*

*Ralph A. Alfieri,* for appellant Putnam.

*Anthony Savage* and *Kempton, Savage & Gossard,* for appellant Hiatt.

*Norm Maleng, Prosecuting Attorney,* and *H. Duane Evans, Deputy,* for respondent.

RINGOLD, J.—Defendants Patrick Putnam and Calvin Hiatt appeal the judgments and sentences entered upon their convictions by a jury of the crimes of promoting prostitution in the second degree and criminal conspiracy. We reverse the criminal conspiracy convictions and affirm the convictions for promoting prostitution in the second degree.

As the result of a King County Police investigation of two businesses suspected of being fronts for prostitution, the Kinky Korner (Korner) and the American Sexuality Society (Society), Putnam and Hiatt were arrested and charged by second amended information with the crimes of promoting prostitution in the second degree and criminal conspiracy.[1]

---

[1]Codefendants Donald Jessup and Haldon Croasmun were charged with promoting prostitution in the first degree and criminal conspiracy. Jessup was con-

The investigation began in early 1979 but was impeded by the elaborate customer screening procedures at the Korner. The police found it necessary to employ unorthodox investigatory methods, planting an undercover civilian agent, "Ms. A", as an employee at the Korner and later at the Society. "Ms. A" was told by the police to "do what was necessary" to gather evidence of prostitution. She was specifically authorized to "turn tricks", and engaged in 20 to 25 acts of prostitution over a 3-week period. She also supervised other women at the Society and took part in recruitment activities with the knowledge of the police, who had told her to "go ahead."

At the pretrial hearing the defendants moved for dismissal or suppression of "Ms. A's" testimony at trial because of the police investigatory methods. The court denied the motions. The trials of the four defendants were severed. Hiatt and Putnam were tried together before a jury and found guilty on all counts. Each received a prison sentence of 5 years for promoting prostitution in the second degree and 1 year for criminal conspiracy, to be served concurrently. Thirteen assignments of error are made which present three issues for our consideration.

## Conspiracy Charge

Defendants contend that it was improper to charge and convict under both RCW 9A.28.040,[2] the general conspiracy statute, and RCW 9A.88.080,[3] promoting prostitution in

---

victed in a separate trial and appealed.

[2] RCW 9A.28.040, criminal conspiracy:

"(1) A person is guilty of criminal conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them takes a substantial step in pursuance of such agreement."

[3] RCW 9A.88.080, promoting prostitution in the second degree.

"(1) A person is guilty of promoting prostitution in the second degree if he knowingly:

"(a) Profits from prostitution; or

"(b) Advances prostitution.

the second degree. They argue that the words "or engages in any other conduct designed to institute, aid, or facilitate an act or enterprise of prostitution", used in defining the crime under RCW 9A.88.080, encompass any and all conspiratorial acts committed. They contend that the existence of the specific prostitution statute excludes application of the general conspiracy statute, and view *State v. Cann*, 92 Wn.2d 193, 595 P.2d 912 (1979), as controlling. The State responds that *Cann* is based on specific statutory language dealing with soliciting, and is inapplicable to the offense of conspiracy.

In *Cann* the defendant invited two police agents posing as prostitutes to join his prostitution enterprise. He was convicted under RCW 9A.88.080 of promoting prostitution in the second degree, and argued on appeal that the statutory scheme was unconstitutional since it gave the prosecutor the option of charging either a misdemeanor (criminal solicitation, RCW 9A.28.030) or a felony (promoting prostitution in the second degree, RCW 9A.88.080) for the same conduct. The court held that RCW 9A.88.080 was a special statute intended to punish conduct relating to prostitution activity, including solicitation for such purposes. *Cann*, at 197. Applying the rule of statutory construction that where general and special laws are concurrent, the special law applies to the exclusion of the general, the court held that Cann could not have been charged under RCW 9A.28.030 for solicitation of prostitutes, and affirmed the conviction. *Id.*

We disagree with the State's contention that the *Cann* court did not rely on the "any other conduct" clause of

---

"(2) Promoting prostitution in the second degree is a class C felony."

The phrase "advances prostitution" is defined in RCW 9A.88.060:

"(1) 'Advances prostitution.' A person 'advances prostitution' if, acting other than as a prostitute or as a customer thereof, he causes or aids a person to commit or engage in prostitution, procures or solicits customers for prostitution, provides persons or premises for prostitution purposes, operates or assists in the operation of a house of prostitution or a prostitution enterprise, *or engages in any other conduct designed to institute, aid, or facilitate an act or enterprise of prostitution.*" (Italics ours.)

9A.88.060, but on the express statutory language dealing with "soliciting." That clause reads "solicits customers for prostitution". RCW 9A.88.060(1). Cann did not solicit customers, he solicited prostitutes. The court held that application of the general solicitation statute to prostitution was precluded by the language of RCW 9A.88.060, proscribing "conduct designed to institute, aid, or facilitate an act or enterprise of prostitution."

██ We hold that *Cann* likewise precludes the charging of a general conspiracy to promote prostitution under RCW 9A.28.040. Any agreement to engage in or cause the performance of prostitution activity constitutes "conduct designed to institute, aid, or facilitate an act or enterprise of prostitution." Under the rule of *Cann,* the specific statute excludes the general and "the prosecutor . . . is not at liberty to charge under the general statute a person whose conduct brings his offense within the special statute." *Cann,* at 197. The conspiracy convictions must be reversed.

## ENTRAPMENT AND DUE PROCESS

Putnam and Hiatt argue that the police conduct was so outrageous as to constitute either entrapment as a matter of law or a violation of due process.

The entrapment defense has been codified in Washington.[4] The statute articulates the "subjective" theory of entrapment, requiring proof of mental state; if a defendant was otherwise disposed to commit the crime, the defense is not available. *State v. Swain,* 10 Wn. App. 885, 520 P.2d 950 (1974). Neither appellant has urged that the police misconduct in this investigation induced them to commit

---

[4]RCW 9A.16.070 provides:

"Entrapment. (1) In any prosecution for a crime, it is a defense that:

"(a) The criminal design originated in the mind of law enforcement officials, or any person acting under their direction, and

"(b) The actor was lured or induced to commit a crime which the actor had not otherwise intended to commit.

"(2) The defense of entrapment is not established by a showing only that law enforcement officials merely afforded the actor an opportunity to commit a crime."

the crimes charged; thus no entrapment defense is available.

Putnam and Hiatt claim, however, that "Ms. A's" acts of prostitution and the police approval and encouragement thereof were so shocking to the universal sense of justice as to violate the due process standard of fundamental fairness, requiring dismissal under *United States v. Russell,* 411 U.S. 423, 36 L. Ed. 2d 366, 93 S. Ct. 1637 (1973) and *State v. Emerson,* 10 Wn. App. 235, 517 P.2d 245 (1973).

■ In general, illegal conduct by the police or police agents is not sufficient by itself to justify dismissal on due process grounds. Police investigatory misconduct, however, may reach such a level of outrageousness that dismissal of the resulting criminal charges is required. The United States Supreme Court recognized the existence of such a defense in *Russell,* at pages 431–32:

> we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, . . . [but t]he law enforcement conduct here stops far short of violating that "fundamental fairness, shocking to the universal sense of justice," mandated by the Due Process Clause of the Fifth Amendment.

(Citation omitted.)

In *Emerson,* this court rejected a defense based on public policy considerations and examined the due process standard set out in *Russell.* It characterized the *Russell* standard as being "at least implicitly the product of reconciliation of competing public policies," *Emerson,* at 241–42, and set out the proper methodology for application of the standard:

> Concepts of public policy and due process utilized by the proponents of each of the views described call for the balancing of the public policies involved and a choice of a public policy to be enforced. Public policy requires that crime be detected and its perpetrators punished. Public policy also requires that a defendant be fairly treated. Practical considerations require that, in the performance by police of crime detection duties, at least some deceitful practices and "a limited participation" in unlawful

practices be tolerated and recognized as lawful.
*Emerson,* at 240.

The trial court in the present case applied this approach in making its determination that the police methods were not so outrageous as to require dismissal or suppression. The conscientious and careful trial judge balanced the defendants' misconduct with that of the police and ruled that the societal interests involved justified the police investigatory methods.[5] Although he specifically stated for the record that his decision was based on personal standards "because I cannot speak for society at large", his reasoning demonstrates that due regard was given to the standard set by *Russell* and *Emerson.* It was not error to

---

[5]The court stated: "If Mr. Frost is correct, and I believe him, that [his] social conscience as well as legal conscience is touched by what took place here that gives me the courage to say that my social conscience is not as touched, and I'm not as outraged with what took place here when I consider the fact that I have to weigh the social standards involved here.

"Mr. Frost referred to the unfortunate women involved. I think that that is the one side of the scale as far as my balancing act that takes place here today. Do we put the unfortunate women in a position to do something about their problem with the assistance of the police department or do we say no, you can get yourself beat up or killed or whatever and we can't do anything about it because our policy will not let that evidence in court to prosecute the aggressors.

"I'm sure that the Appellate Court is going to struggle with this harder than I am, because I have the advantage of seeing the actors involved here. I shake my conscience socially to find the outrage that all defense attorneys are speaking of. Perhaps I'm socially deficient but I cannot strike the outrage or even the standards of the cases cited me as far as dismissing this case. I think that in the Appellate process of reviewing what I'm doing here, they are going to have to decide as a matter of public policy whether or not their consciences will allow a crime at this level to defeat a crime that the defendants are charged with. It is my hope that the Appellate Court will join with me in believing that the unfortunate women are entitled to some social relief, and some legal relief, and to adopt the proposition that there is no answer for them, even though Mr. Frost does suggest wire taps and other solutions, from a practical standpoint I just don't see how this problem can be solved without taking the steps that the police officers did in this case.

"I'll confess that it is indeed very much of a reviewable issue. I will indicate to the record that I'm applying my subjective, social standards because I cannot speak for society at large. I'm simply guessing that even as a legislator that this would be the—receive the legislative stamp of approval as a social standard as well as a legal one. To put it shortly, the motion to dismiss under the due–process provisions of the Constitution will be denied."

deny the motion to dismiss.

## PERMITTING PROSTITUTION AS A LESSER INCLUDED OFFENSE

Putnam contends that the trial court erred in failing to give his proffered instruction on permitting prostitution[6] as a lesser included offense of promoting prostitution in the second degree.

A lesser included offense instruction is proper only where each element of the "lesser" offense is a necessary element of the "greater" offense, and the evidence supports an inference that only the "lesser" offense was committed. *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978); *State v. Bower,* 28 Wn. App. 704, 626 P.2d 39 (1981). The first prong of this test must be strictly applied to ensure that a defendant is not convicted of a crime with which he has not been charged. Const. art. 1, § 22; *see State v. Miller,* 30 Wn. App. 443, 635 P.2d 160 (1981). An equivalent form of this test is that if it is possible to commit the greater offense without having committed the lesser offense, the latter is not an included crime. *State v. Roybal,* 82 Wn.2d 577, 512 P.2d 718 (1973).

The offense of permitting prostitution requires that the perpetrator have "possession or control of premises which he knows are being used for prostitution purposes". RCW 9A.88.090. If a person violates RCW 9A.88.080, promoting prostitution in the second degree, without possessing or controlling the premises, the greater offense has been committed without committing the lesser. Permitting prostitution is not a lesser included offense of promoting prostitution in the second degree. The trial court properly refused the instruction.

---

[6]RCW 9A.88.090, permitting prostitution.

"(1) A person is guilty of permitting prostitution if, having possession or control of premises which he knows are being used for prostitution purposes, he fails without lawful excuse to make reasonable effort to halt or abate such use.

"(2) Permitting prostitution is a misdemeanor."

OTHER ISSUES

The defendants next contend that the trial judge improperly commented on the evidence in his instruction to the jury setting forth the elements of conspiracy. Because the allegedly improper statements related solely to the conspiracy charges, which we have concluded must be reversed, we need not reach this issue.

■ The appellants finally object to various rulings made by the trial court concerning the order of proof and probative value of certain evidence. These rulings were within the sound discretion of the trial court and will not be disturbed absent a showing of abuse of discretion. No such showing has been made. As this court stated in *State v. Johnson,* 12 Wn. App. 548, 550-51, 530 P.2d 662 (1975):

> A trial judge, in conducting a trial, is more than a mere umpire. He must oversee and direct the trial to the end that the merits of the case be reached with reasonable dispatch and with fairness to the parties litigant. . . . the trial judge during trial may exercise discretion concerning such matters as the order of proof, the use of leading or impeaching questions, the qualifications of a witness to testify, the admissibility of evidence in passing on objections, claiming the evidence is irrelevant or remote, the scope of direct, cross, redirect, or subsequent examination of witnesses, the phrasing of instructions, the order in which the instructions are given, and the statement of reasons for rulings made.

We reverse Putnam's and Hiatt's convictions under RCW 9A.28.040, and remand with instructions to dismiss the conspiracy charges. We affirm the convictions under RCW 9A.88.080, vacate the judgments and sentences entered thereon, and remand for resentencing on that offense alone.

ANDERSEN, C.J., and JAMES, J., concur.

Reconsideration denied February 23 and March 2, 1982.

Review denied by Supreme Court May 21, 1982.