**MUNICIPALITY OF ANCHORAGE, Appellant,**

v.

**Lynda S. FLANAGAN, Appellee.**

**No. 5896.**

Court of Appeals of Alaska.

Aug. 27, 1982.

---

Allen M. Bailey, Municipal Prosecutor, and Theodore D. Berns, Municipal Atty., Anchorage, for appellant.

Christine Schleuss, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellee.

Before BRYNER, C. J., COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

In this case we are called upon to review an order entered by the district court dis-

missing, on grounds of entrapment, a criminal complaint filed by the Municipality of Anchorage.[1]

The essential facts are not in dispute. During the month of January, 1981, John H. Chandler worked on a voluntary basis as a reserve officer for the Anchorage Police Department. While reading a local advertising tabloid, Chandler spotted an advertisement for the "North Star Dating Service." He mentioned the ad to members of the Anchorage Police Department's vice squad, with whom he occasionally worked, and was encouraged to call the dating service. Chandler placed a call on January 31, 1981. The call was answered by a woman who gave Chandler directions to the dating service and told him that he could receive a "body massage" for the price of forty dollars.

In order to ascertain whether the North Star Dating Service was involved in prostitution, Chandler, with the approval of vice squad officers, agreed to go to that establishment and pose as a prospective customer. Chandler followed the directions he had been given to reach the dating service; upon arrival, he knocked at the door. Lynda Flanagan answered the door and asked Chandler to enter. Flanagan asked Chandler if he was the person who had just called, and when Chandler responded that he was, Flanagan led him to a bedroom.

In the bedroom, Chandler asked Flanagan a number of questions about her willingness to perform specific sexual acts in return for payment of money. Although Flanagan initially indicated some suspicion that Chandler might be an undercover police officer, she eventually told him that she would perform a body massage for forty dollars, fellatio for fifty dollars, and a combination of fellatio and sexual intercourse for sixty dollars.

Chandler told Flanagan that he wanted her to perform both fellatio and sexual intercourse, and he paid her sixty dollars. He was then directed by Flanagan to take off his clothes and lie down on the bed; Flanagan also disrobed. Once Chandler was undressed and on the bed, Flanagan gave him a brief back massage after which she asked him to turn over. Chandler complied with this request, and when he did so, Flanagan stroked his penis several times with her hand. After a period of several seconds, Flanagan prepared to engage in fellatio with Chandler. At this point Chandler stopped Flanagan and placed her under arrest. She was charged with assignation for the purpose of prostitution, a misdemeanor under Anchorage Municipal Code (AMC) Section 8.14.020.

Flanagan filed a pretrial motion to dismiss the complaint against her on the ground of entrapment. In the motion she argued that Chandler had waited an impermissibly long period of time before performing an arrest and that Chandler's willingness to engage in sexual contact with Flanagan before arresting her was unconscionable conduct, amounting to entrapment under Alaska law.

After conducting an evidentiary hearing, the district court granted Flanagan's motion to dismiss. In granting the motion, the court relied primarily on a portion of the holding in *Pascu v. State*, 577 P.2d 1064 (Alaska 1978). We conclude that the district court's application of the *Pascu* standard of entrapment to the particular factual circumstances of this case was mistaken.

Flanagan at no time asserted, nor did the district court find, that Chandler's conduct before he disrobed and permitted Flanagan to engage in sexual contact with him was improper. Indeed, it would be difficult to claim entrapment based solely on Chandler's adoption of an undercover role and his involvement in a conversation with Flanagan in the course of which he arranged to obtain sexual favors in return for the payment of money. As the court in *Pascu* noted:

1. A petition for review of the district court's order of dismissal was filed with this court by the Municipality of Anchorage pursuant to Appellate Rule 402; we subsequently issued an order granting review. We note that, in accordance with our decision in *State v. Michel*, 634 P.2d 383 (Alaska App. 1981), which was rendered after the petition for review in this case was granted, the municipality would have the right to appeal the district court's ruling.

[I]t is quite proper for the police to provide the opportunity for one engaged in criminal activities to ply his trade.

*Pascu v. State*, 577 P.2d at 1068.[2] · Thus, the district court's finding of entrapment in this case was, of necessity, predicated exclusively upon the fact that Chandler delayed his arrest of Flanagan until after sexual contact between them had been initiated.

We do not believe, however, that the defense of entrapment, as provided for in *Pascu*, can properly be invoked as to the challenged conduct on the part of Chandler. We reach this conclusion because we find that those aspects of Chandler's conduct which have been challenged were not causally related to Flanagan's commission of the crime charged.

■ The entrapment doctrine has traditionally been regarded as a safeguard against the use of unfair inducement by law enforcement officers to instigate commission of crimes by individuals who would otherwise be innocent of wrongdoing. This view of the defense of entrapment was espoused by the Alaska Supreme Court in *Grossman v. State*, 457 P.2d 226, 227 (Alaska 1969):

> It is plain enough that the underlying basis of entrapment is found in public policy, as discerned and announced by the courts. As Judge Learned Hand perceptively observed in *United States v. Becker*, 62 F.2d 1007, 1009 (2d Cir. 1933), 'The whole doctrine derives from a spontaneous moral revulsion against using the powers of government to beguile innocent, though ductile, persons into lapses which they might otherwise resist.'

This view of the entrapment defense presupposes the existence of some form of active inducement that leads to the commission of an offense by the accused.

■ The need for a causal link between police conduct and the commission of a crime by the accused as a precondition to invocation of the entrapment defense was recently noted by the Michigan Court of Appeals. In *People v. Moore*, 73 Mich.App. 514, 252 N.W.2d 507, 508 (1977), the court, applying an objective standard of entrapment, concluded that drug use by an undercover police officer in the presence of the defendant prior to the defendant's sale of drugs to the officer did not constitute entrapment. In so holding, the court in *Moore* relied on a finding that the officer's conduct was independent of and causally unconnected to the defendant's sale of drugs:

> [W]e cannot find a causal connection between the acts of the officer and those of the defendant that could be properly characterized as inducement or incitement. The acts were independent of each other, so do not warrant invocation of the entrapment sanction.

■ In this case, even assuming that the mere acquiescence by Chandler to Flanagan's sexual contact with him could be construed as a form of police conduct inducing or instigating commission of an offense, it is manifest that this conduct was independent of and unconnected to Flanagan's commission of the offense of assignation. In no realistic sense could it be said that Flanagan's decision to commit the crime of assignation was prompted by, or causally related to the questioned conduct on Chandler's part. In fact, Flanagan accepted Chandler's money and agreed to commit an act of prostitution, thus in effect committing the crime charged,[3] prior to Chandler's acquiescence to sexual contact.

---

**2.** *See also United States v. Becker*, 62 F.2d 1007, 1008 (2d Cir. 1933), in which Judge Learned Hand wrote:

> [I]t has been uniformly held that when the accused is continuously engaged in the proscribed conduct, it is permissible to provoke him to a particular violation which will be no more than an instance in a uniform series.

**3.** This is true regardless of whether or not the offense of assignation for the purpose of prostitution is considered to be a continuing offense. Even if Flanagan's touching of Chandler is deemed to be an act in furtherance of the initial assignation, thus rendering the offense a continuing one, evidence of such continuing conduct is not necessary to prove assignation. Under the terms of AMC 8.14.020 and 8.14.010(a), all acts necessary to establish the crime

The district court apparently recognized the absence of any causal nexus between the challenged conduct of Chandler and the commission of assignation by Flanagan. Nevertheless, the court interpreted our supreme court's decision in *Pascu v. State* as dispensing with any requirement of police inducement or persuasion as a prerequisite to the defense of entrapment.

■ *Pascu* undeniably expanded the scope of the entrapment defense by abandoning the objective, "average person" standard of entrapment previously adopted by the court in *Grossman v. State*, 457 P.2d at 229. However, we do not think that *Pascu* can correctly be read to have abandoned the need for police conduct involving inducement, persuasion or instigation as an essential component of the entrapment defense.[4]

In this case, the district court chose to emphasize the language of *Pascu* in which the Alaska Supreme Court stated:

In determining whether entrapment has occurred, the trial court must focus 'upon the particular conduct of the police in the case presented.' The question is really whether that conduct falls below an acceptable standard for the fair and honorable administration of justice.

*Pascu v. State*, 577 P.2d at 1067 (citation omitted). Applying that part of the *Pascu* standard, the district court concluded that Chandler's conduct fell "below an acceptable standard for the fair and honorable administration of justice," and that it therefore constituted entrapment.

■ In our view, however, this language of the *Pascu* decision cannot properly be read in isolation; it must be read in the context of the paragraph in which it appears:

Since announcing our decision in *Grossman* we have come to realize that there are certain difficulties in applying . . . [the "average person"] standard. An 'average person' probably cannot be induced to commit a serious crime except under circumstances so extreme as to amount to duress. Yet it is clear that entrapment may occur where the degree of inducement falls short of actual duress. What is prohibited, by *Grossman*, is unreasonable or unconscionable efforts on the part of the police to induce one to commit a crime so that he may be arrested and prosecuted for the offense. In determining whether entrapment has occurred, the trial court must focus 'upon the particular conduct of the police in the case ' presented.' The question is really wheth-

---

of assignation were completed when Flanagan made an engagement with Chandler for an act of prostitution. *Cf. Rubey v. City of Fairbanks*, 456 P.2d 470 (Alaska 1969) (where the offense of assignation could be made out either by an "appointment" or an "act in furtherance" thereof).

4. A causal relationship—in the form of inducement, persuasion or instigation—between police conduct and commission of an offense by the accused was clearly contemplated as an essential component of the entrapment defense under the objective standard adopted in *Grossman v. State*, 457 P.2d at 229. The definition of entrapment adopted in *Grossman* was expressly stated in terms of a limitation on the extent to which police inducement should be permitted:

We feel that the proper solution is the objective test which focuses the determination upon the particular conduct of the police in the case presented. Inducements should be limited to those measures which, objectively considered, are likely to provoke to the commission of crime only those persons, and

not others, who are ready and willing to commit a criminal offense.

The objective test can be stated as follows: unlawful entrapment occurs when a public law enforcement official, or a person working in cooperation with him, in order to obtain evidence of the commission of an offense, induces another person to commit such an offense by persuasion or inducement which would be effective to persuade an average person, other than one who is ready and willing, to commit such an offense. Conversely, instigations which would induce only a person engaged in an habitual course of unlawful conduct for gain or profit do not constitute entrapment.

*Id.* (footnote omitted). *Cf. Braham v. State*, 571 P.2d 631, 638 (Alaska 1977), *cert. denied*, 436 U.S. 910, 98 S.Ct. 2246, 56 L.Ed.2d 410 (1978) ("The evidence here does not support the defense of entrapment under *Grossman*, or as we stated in *Evans v. State*, 550 P.2d 830, 845 (Alaska 1976), does not present a case of government-sponsored criminality.").

er that conduct falls below an acceptable standard for the fair and honorable administration of justice.

*Pascu v. State,* 577 P.2d at 1066–67 (citation omitted). Upon a reading of the entirety of this paragraph, it becomes apparent that the supreme court, in deciding *Pascu,* did not intend to expand the entrapment defense by opening up all police conduct in criminal cases—without regard to whether the conduct induced or was otherwise causally related to commission by the accused of the offense charged—to general judicial scrutiny for the purpose of determining "whether that conduct falls below an acceptable standard for the fair and honorable administration of justice." Repeated references by the supreme court to police inducement furnish a strong indication of its intent to limit scrutiny of police conduct to cases within the traditional scope of the entrapment doctrine: those cases in which commission of an offense was apparently the direct result of inducement by law enforcement officials.[5]

Because the police conduct that served as the basis for Flanagan's claim of entrapment in this case cannot realistically be viewed as having induced or instigated Flanagan's commission of the offense of assignation for the purpose of prostitution, and because this conduct appears to have had no other causal connection to the crime with which Flanagan was charged, we hold that the defense of entrapment was inapplicable and could not properly be invoked as the basis for dismissal of the complaint.

Flanagan has alternatively maintained that the district court's order of dismissal must be upheld on the ground that Chandler's conduct violated her constitutional right to due process.[6] The question whether police conduct that does not constitute entrapment can be held to violate due process absent a violation of an independent constitutional right of the accused was the subject of passing but inconclusive reference by the United States Supreme Court in *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366, 373 (1973).[7] The Alaska Supreme Court has noted *Russell*'s reference to the possibility of a due process defense based on police misconduct. However, the court has neither adopted nor rejected the theory. *See Evans v. State,* 550 P.2d 830, 844–45 (Alaska 1976).

A number of cases have expressly applied the due process theory. However, these cases have invariably dealt with situations involving extensive and elaborate efforts by law enforcement officers to induce criminal activity or manufacture crime; they have uniformly arisen in jurisdictions that adhere to the subjective theory of entrapment and have involved situations where the defendant was foreclosed from raising entrapment as a result of affirmative evidence of his subjective predisposition to commit the offense charged. *See United States v. Twigg,* 588 F.2d 373 (3d Cir. 1978); *United States v. Jannotti,* 501 F.Supp. 1182 (E.D. Pa.1980); *People v. Isaacson,* 44 N.Y.S.2d 511, 406 N.Y.S.2d 714, 378 N.E.2d 78 (1980). *See also United States v. Russell,* 459 F.2d 671 (9th Cir. 1972), *reversed,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). Such cases might well fall within the broader, objectively based standard of entrapment applicable in Alaska under *Pascu v. State.*

---

5. An additional indication that the court in *Pascu* did not intend to enlarge the entrapment defense to include all "unfair" or "dishonorable" police conduct, regardless of whether it involved inducement, is found in the court's concluding remarks on the entrapment issue:

   [W]e . . . subscribe to the view that officials cannot 'implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute.' '[U]nder standards of civilized justice, there must be some control on the kind of police conduct which can be permitted in the manufacture of crime.'

   *Pascu v. State,* 577 P.2d at 1068 (citations omitted).

6. U.S.Const. amend. V and XIV; Alaska Const. art. I, § 7.

7. *But see Hampton v. United States,* 425 U.S. 484, 488–89, 96 S.Ct. 1646, 1649, 48 L.Ed.2d 113, 118 (1976). *See also id.,* 425 U.S. at 492–93, 96 S.Ct. at 1651, 48 L.Ed.2d at 120 (Powell, J., concurring).

However, in the present case, we need not decide whether dismissal of a criminal charge on due process grounds might be compelled under appropriate circumstances. It is sufficient to observe that the circumstances of the present case involve conduct falling short of a due process violation. Any case involving a potentially tenable due process claim would require the existence of outrageous police conduct, shocking the universal sense of justice and violating the concept of fundamental fairness. *United States v. Russell*, 411 U.S. at 431–32, 93 S.Ct. at 1642–43, 36 L.Ed.2d at 373. We do not think that Chandler's conduct approaches this level of seriousness.

Our conclusion in this regard is bolstered by the recent decision in *State v. Putnam*, 31 Wash.App. 156, 639 P.2d 858, 861–62 (1982). In *Putnam*, the Washington Court of Appeals rejected the assertion of a due process defense in a case involving use of an undercover civilian agent who actively worked as a prostitute over a period of several months while infiltrating an illicit enterprise engaged in the business of prostitution. While the investigation in *Putnam* resulted in felony convictions, the investigative tactics employed by police in that case were far more repugnant than those in the present case. Although Chandler's conduct toward Flanagan might be considered questionable, we do not think that this conduct—even in the context of an investigation involving a relatively minor misdemeanor charge—can accurately be characterized as outrageous; nor do we think that Chandler's conduct toward Flanagan could fairly be said to shock the universal sense of justice. Accordingly, we find no violation of Flanagan's due process right to fundamental fairness.

The order of the district court dismissing the complaint in this case is REVERSED, and this case is REMANDED for further proceedings.