STATE OF HAWAII, Plaintiff-Appellee, *v.* FRANCINE TOOKES, Defendant-Appellant

NO. 9279

(DISTRICT COURT NO. C83-2115)

AND

STATE OF HAWAII, Plaintiff-Appellee, *v.* CHRISTEL TARKINGTON, Defendant-Appellant

NO. 9441

(DISTRICT COURT NOS. C83-2265, 2266)

MAY 15, 1985

LUM, C.J., NAKAMURA, PADGETT, HAYASHI
AND WAKATSUKI, JJ.

OPINION OF THE COURT BY LUM, C.J.

These cases are appeals from a conviction for prostitution by Defendant Tookes, and for illegal massage and prostitution by Defendant Tarkington. Both women allege that the conduct of the police agent who was a party to the sexual encounters which led to their convictions denied them due process of law. In addition, Defendant Tarkington asserts the police operation constituted entrapment as a matter of law. While we question whether the police practices used in these cases are consistent with the ethical standards which should guide law enforcement officials, we are unwilling to rule that the acts which occurred constituted a breach of the bounds of decency of constitutional magnitude. We similarly find no merit to the additional defenses raised.

I.

Both women were convicted of prostitution[1] as a result of acts of sexual intercourse with Steven Fox. Fox was a civilian volunteer who acted at the behest of members of the Honolulu Police Department Vice Squad.[2] He was instructed on the law of entrapment, supplied with money to arrange sexual contacts, and given signals by which to contact police surveillance units. He was specifically instructed to engage in sexual intercourse if necessary to obtain evidence sufficient for a conviction.

In No. 9279, sexual relations occurred after Tookes called out to Fox, who was driving a passing car through downtown Honolulu, and asked if he wanted a "date." She accompanied him to a deserted parking lot, where the two discussed money but did not specifically mention sexual acts. She initiated physical contact leading to intercourse.

In No. 9441, Fox called a massage/escort service as instructed by a vice officer. After a return phone call to identify herself, Tar-

---

[1] Hawaii Revised Statutes (HRS) § 712-1200 (Supp. 1984).

[2] Transcript of Proceedings (Tr.), April 13, 1983 at 67-69; Tr., August 15, 1983 at 36.

kington arrived at Fox's hotel room. After he asked her what else was involved in the $50 fee, Tarkington told Fox that $50 would pay for a massage, and that $50 would cover "extras." After paying her $100, Fox was massaged and had intercourse with Tarkington.

## II.

At the center of both of the instant appeals is the allegation that the conduct of the police, in using a civilian agent to secure convictions for prostitution by actually engaging in sexual activity with the Defendants, constituted a violation of the guarantees of due process of law provided by the State and federal constitutions. In particular, Tookes asserts that the police tactics used in this case constituted outrageous conduct in contravention of these due process guarantees.

This argument stems from dictum in which the U.S. Supreme Court opined:

[W]e may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction . . . .

*United States v. Russell,* 411 U.S. 423, 431-432 (1973). The court in *Russell,* and subsequently in *Hampton v. U.S.,* 425 U.S. 484 (1976), left open the possibility of a due process defense such as the one raised in these cases, yet rejected its application on the facts before it.

We are unconvinced that the activities of the police or their agent in these cases is "conduct that shocks the conscience" sufficiently to trigger a defense bottomed on the due process clause. *See Rochin v. California,* 342 U.S. 165, 172 (1952). It is true that "[d]ue process of law, as a historic and generative principle, precludes defining, and thereby confining 'those standards of conduct required of the State in its efforts to prosecute crimes.' " *Id.* at 173. Nevertheless, other states faced with facts similar to these have rejected, as we reject in the instant appeals, a due process defense.

In *Municipality of Anchorage v. Flanagan,* 649 P.2d 957 (Alaska Ct. App. 1982) the Alaska Court of Appeals reversed the dismissal on due process grounds of a criminal charge for prostitution, in a case strikingly similar to the one before this court. A reserve police

officer, working as a volunteer pursuant to encouragement from the city's vice squad, placed a phone call to a dating service. After agreeing with the police to go to the establishment and pose as a prospective customer in order to determine whether prostitution was occurring, Chandler, the reserve member, did so. He initiated discussion of the woman's willingness to perform sexual acts, paid her, and allowed her to engage in sexual contact before placing her under arrest. *Id.* at 959.

The court found that these activities did not so shock the universal sense of justice and violate the concept of fundamental fairness as to deny due process:

> Although Chandler's conduct . . . might be considered questionable, we do not think that this conduct even in the context of an investigation involving a relatively minor misdemeanor charge can accurately be characterized as outrageous.

*Id.* at 963.

The *Flanagan* court relied upon the decision in *State v. Putnam*, 31 Wash. App. 156, 639 P.2d 858 (1982). In the latter opinion, the Washington Court of Appeals upheld convictions for promoting prostitution in a case where a civilian "agent" employed by a business suspected of being a front for prostitution was authorized to "turn tricks" in order to secure convictions. The court noted that in *State v. Emerson*, 10 Wash. App. 235, 517 P.2d 245 (1973), it had recognized that the due process "defense" involved a balancing of policy considerations in favor of crime detection and punishment against the policy of fair treatment. Stating that practicality required in some cases that the police participate in unlawful practices, the *Putnam* court refused to disturb the trial court's balancing of these competing interests. 31 Wash. App. at 162, 639 P.2d at 862.

In the instant cases, the trial judges both evaluated the police practices at issue and found no due process violation. We cannot say that their conclusions were in error. There was no showing that Fox's actions increased the criminality which was already occurring. The use of an agent was deemed necessary by the police in order to gain acceptance by participants in a criminal act. Similar factors led one court to reject the due process defense to a prostitution charge. *State v. Jessup*, 31 Wash. App. 304, 641 P.2d 1185 (1982).

While we question whether the actions of Fox and the police in this case comport with the ethical standards which law enforcement officials should be guided by, we cannot say that they constituted outrageous conduct in the constitutional sense. Neither are we able to find a due process violation because Fox's conduct, if undertaken by a police officer, would have violated an internal Department rule against engaging in sex with a prostitute in order to obtain evidence sufficient for a conviction.[3] Admittedly, the police are not to be congratulated for having discovered a means to circumvent the rules promulgated as standards for their own conduct. There was no showing, however, that such a rule was compelled by law or the constitution. As such, the fact that an agent was used to avoid it seems a slim thread upon which to hang a holding of constitutional dimensions.

### III.

Finally, we find no merit in Defendant Tarkington's argument that the police conduct at issue entrapped her into committing the prostitution offense. By statute, entrapment is an affirmative defense if the defendant shows he:

[E]ngaged in the prohibited conduct ... because he was induced or encouraged to do so by a law enforcement officer, or by a person acting in cooperation with a law enforcement officer, who, for the purpose of obtaining evidence of the commission of an offense ....

(b) Employed methods of persuasion or inducement which created a substantial risk that the offense would be committed by persons other than those who are ready to commit it.

HRS § 702-237(1) (1976).

Tarkington has no valid claim that police tactics induced her criminal actions. She arrived at Fox's hotel room in response to a phone call to the service which employed her. She inquired whether Fox understood the service's fee arrangement and asked whether he was a policeman. She returned the conversation to the

---

[3] Tr., April 13, 1983 at 17.

subject of a $50 fee for "extras," and instructed Fox to undress and lie back.

Allegations of entrapment require more than that the police provide an opportunity for commission of a crime. *U.S. v. Tobias,* 662 F.2d 381 (5th Cir. 1981), *cert. denied,* 457 U.S. 1108 (1982). A mere solicitation of criminal activity by the police is not a sufficient inducement. *U.S. v. Burkley,* 591 F.2d 903 (D.C. Cir. 1978), *cert. denied,* 440 U.S. 966 (1979). The police conduct in this case cannot be said to have had the probable effect on a "reasonable person" of inducing her to engage in prostitution were she not ready to do so. *State v. Anderson,* 58 Haw. 479, 484, 572 P.2d 159, 162 (1977). As such, Tarkington's claim that she was entrapped lacks persuasive force.

## IV.

Defendant Tarkington argues that Hawaii's law against prostitution violates the guarantees of equal protection of the laws provided by the federal and State constitutions. She alleges first that the statute is facially unconstitutional. We must reject this contention. The statute provides, in pertinent part:

A person commits the offense of prostitution if he engages in, or agrees or offers to engage in, sexual conduct with another person in return for a fee.

HRS § 712-1200(1)(Supp. 1984).

This prohibition is gender-neutral — that is, it is triggered by a sale of sexual services by a man or a woman. Even if the prohibition were deemed to set up a gender-based classification, it would be invalid only if it did not serve important government objectives and was not substantially related to achieving those objectives. *State v. Rivera,* 62 Haw. 120, 612 P.2d 526 (1980). The decision to target punishment on the seller of a prohibited service, whose profit motivation could lead him or her to violate the law more frequently than potential customers, easily satisfies this standard.

In order to rely upon equal protection as a ground of invalidating the law, therefore, Tarkington will need evidence of a pattern of discriminatory enforcement against women so overwhelming that intent to discriminate can be inferred. Such a pattern of invidious discrimination, demonstrating an unequal application of

the law extreme enough to show intentional discrimination is necessary because the Supreme Court has held that the disparate impact of legislation alone is not enough to make out an equal protection violation. *Washington v. Davis,* 426 U.S. 229, 239 (1976) (race); *Arlington Heights v. Metropolitan Housing Corp.,* 429 U.S. 252, 265 (1977) (race).

As this court has stated:

The burden of proving discriminatory enforcement of the law rests upon the party raising the defense .... That party must present sufficient evidence to establish the existence of intentional or purposeful discrimination, ... that is "deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification" .... (Citations omitted).

*State v. Kailua Auto Wreckers, Inc.,* 62 Haw. 222, 226-7, 615 P.2d 730 (1980).

Tarkington has failed to sustain this burden. In this case, there was no testimony that police avoided arresting known male prostitutes, for example. Officer Langer, who participated in the investigation, testified that there was no department policy to discriminate against female prostitutes in favor of male prostitutes. He noted that he himself had arrested a man for prostitution.

This testimony indicated to the trial court that, while there might be sexual imbalance in the State's efforts to combat prostitution, no showing of sexual discrimination was made. We cannot say that this conclusion was error.

Finding no merit in the Defendants' remaining contentions,[4] we affirm the rulings of trial courts below.

Affirmed.

*Susan Barr,* Deputy Public Defender (*Alvin T. Sasaki,* Deputy Public Defender, and *John M. Tonaki,* Law Student, on the opening brief) for defendant-appellant Francine Tookes.

*Barbara Lee Melvin* for defendant-appellant Christel Tarkington.

*Alexa Fujise, (Arthur E. Ross* on the brief), Deputy Prosecuting Attorneys, for plaintiff-appellee State of Hawaii.

---

[4] Defendant Tarkington also raised arguments regarding the imposition of a mandatory minimum sentence in her case.