**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000749
18-JUN-2020
07:48 AM**

NO. CAAP-18-0000749

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
ISAAC K. TANGONAN, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1DTA-18-00818)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, and Chan and Wadsworth, JJ.)

Defendant-Appellant Isaac K. Tangonan (**Tangonan**) appeals from the Notice of Entry of Judgment and/or Order and Plea/Judgment, entered by the District Court of the First Circuit, Honolulu Division (**District Court**), on September 13, 2018.[1]  Following a bench trial, Tangonan was convicted of one count of Operating a Vehicle Under the Influence of an Intoxicant (**OVUII**), in violation of Hawaii Revised Statutes (**HRS**) § 291E-61(a)(1) (Supp. 2017).[2]

---

[1] The Honorable Michelle N. Comeau presided.

[2] HRS § 291E-61(a)(1) provides, in relevant part:

> **Operating a vehicle under the influence of an intoxicant.**  (a)  A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
>
> (1)  While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

On appeal, Tangonan contends that the District Court erred in denying his motion for a judgment of acquittal because the evidence adduced at trial established his entrapment defense as a matter of law.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Tangonan's point of error as follows:

We apply the following standard in reviewing a trial court's denial of a motion for a judgment of acquittal: "whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the [trier of fact], a reasonable mind might fairly conclude guilt beyond a reasonable doubt." State v. Alston, 75 Haw. 517, 528, 865 P.2d 157, 164 (1994) (citing State v. Nakoa, 72 Haw. 360, 363, 817 P.2d 1060, 1062 (1991)).

In this case, Tangonan sought a judgment of acquittal based on his defense of entrapment. As relevant here, HRS § 702-237(1)(b) (2014) states:

> (1) In any prosecution, it is an affirmative defense that the defendant engaged in the prohibited conduct or caused the prohibited result because the defendant was induced or encouraged to do so by a law enforcement officer, . . . who, for the purpose of obtaining evidence of the commission of an offense, . . . :
>
> . . . .
>
> (b)    Employed methods of persuasion or inducement which created a substantial risk that the offense would be committed by persons other than those who are ready to commit it.

In addition, HRS § 701-115(2)(b) (2014) provides:

> (2) No defense may be considered by the trier of fact unless evidence of the specified fact or facts has been presented.  If such evidence is presented, then:
>
> . . . .
>
> (b)    If the defense is an affirmative defense, the defendant is entitled to an acquittal if the trier of fact finds that the evidence, when considered in light of any contrary prosecution evidence, proves by a preponderance of the evidence the specified fact or facts which negative penal liability.

2

See State v. Anderson, 58 Haw. 479, 484, 572 P.2d 159, 163 (1977) ("entrapment is an affirmative defense for which the defendant bears the burden of proof by a preponderance of the evidence" (citing People v. Tewksbury, 544 P.2d 1335 (Cal. 1976))).

Here, Tangonan argues that the evidence established as a matter of law that he was entrapped into committing the prohibited conduct by a police officer. "In other words, [he] contend[s] that no reasonable mind might fairly conclude that the evidence failed to prove more probably than not that [he was] entrapped." State v. Timas, 82 Hawaiʻi 499, 510, 923 P.2d 916, 927 (App. 1996). Based on our review of the record, as further explained below, we conclude the evidence permitted a reasonable mind to fairly conclude that Tangonan did not sustain his burden of proving entrapment.

The Hawaiʻi Supreme Court applies an objective test for determining whether a defendant was entrapped. As the court has explained:

> In enacting HRS § 702-237, the legislature adopted the approach of the Model Penal Code which endorsed the objective test of the entrapment defense. Under the objective test . . . , "the focus of inquiry is not on the predisposition of the defendant to commit the crime charged, but rather is on the conduct of the law enforcement officials."

State v. Agrabante, 73 Haw. 179, 192-93, 830 P.2d 492, 499 (1992) (quoting Anderson, 58 Haw. at 483, 572 P.2d at 162). The court further stated that under this objective test, the dispositive question is whether the actions of the police were "so extreme that it created a substantial risk that persons not ready to commit the offense alleged would be persuaded or induced to commit it." Id. at 193, 830 P.2d at 499 (quoting Anderson, 58 Haw. at 483, 572 P.2d at 162) (internal quotation marks omitted); see also State v. Tookes, 67 Haw. 608, 614, 699 P.2d 983, 987 (1985) ("Allegations of entrapment require more than that the police provide an opportunity for commission of a crime. A mere solicitation of criminal activity by the police is not a sufficient inducement." (citations omitted)).

At trial, Officer Joshua Wong (**Officer Wong**) of the Honolulu Police Department testified to the following: On

February 18, 2018, he was on patrol, on Ala Wai Boulevard, in Waikiki, when he noticed a Toyota pickup truck in the parking lane, on the far right-hand side of the road.  Next to the parking lane, separated by a solid, white line, was a bicycle lane.  The front and rear tires of the driver's side of the truck were protruding about one foot into the bicycle lane.  Sticking out of the front, driver's side of the truck were a man's legs and half of his torso.  Officer Wong circled around and drove back onto Ala Wai Boulevard.  His intention was "to go back around to see if the person inside the vehicle was planning on parking the vehicle and leaving it like that or if they were going to exit and move on.  So [he] wanted them to at least move over and straighten out the vehicle so that it's not blocking the bicycle lane."

Officer Wong further testified as follows:  He pulled up alongside the truck and saw the same person, now with his hands on the hood of the vehicle directly behind the truck.  Officer Wong stopped and asked the man (later identified as Tangonan) if the vehicle he had his hands on was his.  Officer Wong asked the question because he "wanted to make sure that [Tangonan] wasn't committing any kind of like property damage or doing something illegal to somebody else's property . . . ."  Tangonan responded that it was not his car.  Officer Wong then asked Tangonan if the truck in front of him was his truck because he "was going to ask [Tangonan] if he could move his truck a little further up into the parking stall that he was in and straighten it out so it wouldn't [be] protruding into the bike path so it wouldn't push any other bicycles further into the roadway."  After Tangonan responded that the truck was his, Officer Wong "asked him if he could straighten his truck out so it wasn't blocking the bicycle path."  Tangonan "said he could straighten it out[,]" and Officer Wong waited in his patrol vehicle for Tangonan to do so.

Officer Wong continued his testimony as follows: Tangonan "got in his truck, started it up, and then proceeded to make an immediate left turn[,] going across three lanes[,] and ended up driving the wrong way on Nahua Street[,]" a one-way

4

street about fifteen to twenty feet away.  There was a clear and unobstructed one-way sign on Nahua Street, visible from Ala Wai Boulevard, pointing northbound from Nahua onto Ala Wai Boulevard. Officer Wong turned on his vehicle's lights and siren to stop Tangonan's truck from going further down Nahua Street.  Tangonan stopped on the right-hand side of the street.  Officer Wong stopped his vehicle behind Tangonan's truck, then walked up to the driver's side of the truck and told Tangonan he was stopped because he was driving the wrong way down the street.  The driver's side window was down, and Officer Wong observed the following:

> [W]hen I'm talking to [Tangonan], his speech appeared kind of heavily slurred.  He had a really strong odor of alcohol coming from his breath when I was talking to him.  And when he was speaking to me after I told him why he was being stopped, I could detect the odor of alcohol coming from his breath.  And when I looked at his face, his eyes appeared kind of red and bloodshot.

After making these observations, Officer Wong asked Tangonan for his driver's license, insurance, and registration.  Tangonan produced the registration and insurance, but could not find his driver's license.  "So he opened his door and jumped out of the vehicle and attempted to look for it again . . . on the driver's side of the truck."  Tangonan looked for his driver's license for about three to four minutes but was unable to find it.

Another officer arrived, gave Tangonan a preliminary alcohol screening, and then placed Tangonan under arrest for OVUII.

On cross-examination, defense counsel asked Officer Wong, "did it pop into your mind this guy might have been drinking," when he saw Tangonan's truck parked partially into the bike lane, with Tangonan laying on his side and his legs sticking out.  Officer Wong responded, "[i]t was one possibility."  He further testified, however, that when he first pulled his car up and talked to Tangonan, he (Officer Wong) "got out and stayed kind of by the driver's side area of my . . . car."  From about five feet away, Officer Wong "didn't notice [Tangonan's] red, bloodshot eyes yet" and "didn't smell any alcohol yet," and Tangonan "wasn't slurring yet."

Following the State's case-in-chief, defense counsel moved for a judgment of acquittal based on Tangonan's entrapment defense. The District Court took the matter under advisement, and at a continued hearing ruled as follows:

> So I've had the opportunity to review the relevant law, the statute and then the case law, so thank you for that, including [State v. Powell, 68 Haw. 635, 726 P.2d 266 (1986)]. And then I think, you know, looking at the commentary for Section 702-237, it says the basis for the defense of entrapment is to deter improper conduct on the part of law enforcement officials. And I think I see that in [State v. Anderson, 58 Haw. 479, 572 P.2d 159 (1977)] as well.
>
> So I think that's the real question here is whether or not the officer's purpose in asking the defendant to move his car was to get a foundation and the basis to obtain evidence for the commission of the offense of OVUII. So I think the Powell case, I don't feel that applies here because in that case it was clearly a sting, you know, to get people to provide evidence of pick-pocketing. And then the question is did it amount to entrapment in terms of their actual conduct and not in terms of what the officers wanted to do.
>
> So here . . . I don't think that the defense has proven entrapment by a preponderance of evidence. I think that I'm not persuaded that the officer knew that the defendant was intoxicated based on their limited interaction prior to the officer asking the defendant to move his car. And so I'm going to deny the motion[.]

The trial continued, and Tangonan testified in relevant part as follows: After attending a party in Waikiki, he returned to his truck, drunk, and threw up a couple of times. Officer Wong pulled up and told Tangonan he had to move his truck, and Tangonan told the officer he was drunk. Tangonan was sure the officer had seen him throwing up. The officer repeatedly told him to move his truck or he would be arrested, and he told the officer he was drunk and did not want to get behind the wheel. Tangonan continued: "I was parked right in front and there was a car right behind me . . . . [I]t was a nice parking. But I went out and just did what I did. And I was just too drunk to even drive but I just had to listen to him."

Following the close of Tangonan's case, the District Court denied his renewed motion for judgment of acquittal and found him guilty of OVUII, stating in part:

> I'm going to stand by my prior ruling. I don't think that based on the brief interaction that you've proven by a preponderance of the evidence that the officer was aware, or

> a reasonable officer should have been aware, if that's how you're phrasing it, that the defendant was intoxicated. If he had, that would be a different situation. But that's how I see the evidence.
>
> . . . I'm not going to credit the testimony of the defendant that he told the officer he was drunk. . . . I think the officer's testimony on that point regarding the nature of the interaction is credible. So I'm going to find the defendant guilty based on the totality of the circumstances. There doesn't seem to be any dispute as to the fact that he was indeed drunk and so . . . I'm not going to review the SFST in that regard.

On appeal, Tangonan argues that the District Court was wrong to credit Officer Wong's testimony to the effect that, when he first spoke with Tangonan and asked him to move his truck, Tangonan did not appear to be intoxicated. We decline, however, to pass upon issues regarding the credibility of witnesses and the weight of the evidence, which are within the province of the trier of fact – here, the District Court. See Alston, 75 Haw. 517, 528, 865 P.2d 157, 164; State v. Scalera, 139 Hawaiʻi 453, 460, 393 P.3d 1005, 1012 (2017) ("appellate courts are required to 'give full play to the right of the fact finder to determine credibility'" (quoting State v. Valdivia, 95 Hawaiʻi 465, 471, 24 P.3d 661, 667 (2001))). Upon review of the record, we cannot conclude that the actions of the police were "so extreme that it created a substantial risk that persons not ready to commit the offense alleged would be persuaded or induced to commit it."[3] Agrabante, 73 Haw. at 193, 830 P.2d at 499 (quoting Anderson, 58 Haw. at 483, 572 P.2d at 162) (internal quotation marks omitted). Rather, we conclude that the evidence permitted the District Court to fairly conclude that Tangonan did not sustain his burden of proving entrapment and, accordingly, the District Court did not err in denying Tangonan's motion for judgment of acquittal on that basis.

---

[3] Tangonan also relies on State v. Powell, 68 Haw. 635, 726 P.2d 266 (1986), in support of his contention that the evidence established his entrapment defense as a matter of law. However, the facts here are clearly distinguishable from Powell, where the police essentially manufactured rather than detected the crime, i.e, by setting up "'drunk decoy' operations [that] were expressly designed to ensnare anyone who would commit theft when 'bait money' [was] placed in plain view and within easy reach." Id. at 638, 726 P.2d at 268; see Agrabante, 73 Haw. at 194, 830 P.2d at 500 (describing the police conduct in Powell). The evidence here established no similar scheme.

Therefore, IT IS HEREBY ORDERED that the Notice of Entry of Judgment and/or Order and Plea/Judgment, entered by the District Court of the First Circuit, Honolulu Division, on September 13, 2018, is affirmed.

DATED:  Honolulu, Hawaiʻi, June 18, 2020.


On the briefs:

Jonathan Burge
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Derrick H.M. Chan
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge